UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC LARA, SR. | CIVIL ACTION |
| VERSUS | NO. 05-6860 |
| LOUISIANA DEPARTMENT OF CORRECTIONS, SECRETARY, RICHARD L. STALDER, ET AL. | SECTION: "K"(1) |

## REPORT AND RECOMMENDATION

Plaintiff, Eric Lara, Sr., a state prisoner, filed this *pro se* and *in forma pauperis*[1] complaint pursuant to 42 U.S.C. § 1983 against the Louisiana Department of Public Safety and Corrections, Richard Stalder, James Miller, Robert Tanner, Kathy McGinnis, Peter Mora, the "Medical Department," Dr. Jerry Thomas, Bessie Carter, Nita Pittman,[2] Josh Gall,[3] Lt. Ronnie Seal, Lt. Col. William Dunaway, Jerry Miller, Larry Grow, Capt. Billy Anderson, Douglas Brandon, Micah McMurray, and Elizabeth Olivera. As relief, he requests several million dollars in damages.

---

[1] Several federal lawsuits filed by plaintiff have been dismissed as frivolous, malicious, and/or for failure to state a claim. Lara v. Stalder, Civil Action No. 03-308 (W.D. La.); Lara v. Stalder, Civil Action No. 03-850 (M.D. La.); Lara v. State of Louisiana, Civil Action No. 04-2738 (E.D. La.); Lara v. State of Louisiana, Civil Action No. 05-2661 (E.D. La.); and Lara v. Louisiana Department of Corrections, Civil Action No. 06-47 (E.D. La.). However, because not all of those dismissals occurred or were final prior to the time he filed the instant lawsuit, he was not barred at that time by 28 U.S.C. § 1915(g) from proceeding as a pauper.

[2] Nita Pittman was identified in the original complaint as "Mrs. Pitman."

[3] Josh Gall was identified in the original complaint as "Nurse Josh."

Due to the vague and conclusory allegations of plaintiff's complaint, a Spears hearing was held on April 12, 2006, to allow him a meaningful opportunity to advise the Court of the nature and factual basis of his claims.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[4]  At that hearing, plaintiff was sworn and his testimony was recorded.  Based on his complaint, supplemental filing,[5] and Spears hearing testimony, the Court finds that plaintiff is making the following allegations in support of his claims.

Plaintiff states that on December 10, 2004, while he was being transferred within the Washington Correctional Institute ("WCI") by Lt. Ronnie Seal, Douglas Brandon, and Micah McMurray, he was forced to carry his belongings, weighing approximately one hundred twenty-five pounds, behind his back while handcuffed and shackled.  As he struggled with the heavy load, they loudly mocked him.  Plaintiff then lost his balance and fell on the handcuffs, which he claims "crushed [his] hip against the concrete sidewalk" and "broke [him] in half like a pretzel."

Plaintiff sought medical care for his resulting injuries; however, defendants' alleged deliberate indifference to his medical needs involving his back, spinal cord, wrist, and right leg "rendered [him] a cripple & confined to a wheelchair."  He claims that his injuries progressively worsened and he is now paralyzed from the waist down.

---

[4] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

[5] Rec. Doc. 23.

Plaintiff also contends that, while incarcerated at WCI, he was repeatedly falsely accused and convicted of disciplinary violations. He maintains that he was innocent of all disciplinary charges.

Lastly, he contends that he has continually sought administrative review of his complaints at all levels within the prison system; however, his concerns have never been resolved to his satisfaction.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).[6]

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit,[7] federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or

---

[6] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

[7] Rec. Doc. 2.

>   (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint and supplemental filing,[8] and fully considering his Spears hearing testimony, the Court finds that many of plaintiff's claims lack any arguable basis in law and should be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

Louisiana Department of Public Safety and Corrections

To the extent that plaintiff intends to assert a claim directly against the Louisiana Department of Public Safety and Corrections, this Court has no jurisdiction over that claim. The Eleventh Amendment bars §1983 lawsuits in federal court against that state agency. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312 (5th Cir. 1999); see also Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (the Eleventh Amendment bars federal

---

[8] Rec. Docs. 1 and 23. The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

§ 1983 lawsuits against Louisiana state agencies for both money damages and injunctive relief). Because sovereign immunity deprives the Court of jurisdiction, claims barred by sovereign immunity should be dismissed without prejudice. Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996).

### Medical Department

To the extent that plaintiff is naming the prison "Medical Department" as a separate defendant, that is improper. A medical department is simply a unit within the prison, not a separate legal entity capable of suing and being sued in its own name. Rather, a plaintiff should name as defendants the specific individuals who treated him inadequately or denied him care. In this lawsuit, plaintiff has in fact named those individuals, i.e. Dr. Jerry Thomas, Bessie Carter, Nita Pittman, and Josh Gall. As noted later in this opinion, the undersigned is recommending that plaintiff's claims against those defendants be allowed to proceed, at least at this point.

### Supervisory Officials

Plaintiff has named Richard Stalder, James Miller, Robert Tanner, Kathy McGinnis, Peter Mora,[9] Lt. Col. William Dunaway, Jerry Miller, Larry Grow, and Capt. Billy Anderson as defendants in this proceeding. When asked at the Spears hearing to state the basis of his claims against these defendants, plaintiff identified three legal theories for naming these individuals. First, plaintiff essentially seeks to hold these individuals liable because they supervise others who directly harmed him. Second, plaintiff seeks to hold them liable on the basis that they failed to take adequate corrective action in response to plaintiff's administrative complaints. Third, plaintiff seeks to hold

---

[9] It was unclear from plaintiff's Spears hearing testimony whether Mora is in fact employed at the prison or is simply the person for whom the prison medical department is named. However, in either event, plaintiff has no cognizable claim against Mora.

5

these and all defendants named herein liable on the basis that they have engaged in an ongoing conspiracy to violate his constitutional rights.

As to plaintiff's first legal theory, a supervisory official cannot be held liable for the actions of his subordinates under any theory of vicarious liability in a federal civil rights action filed pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

The Court acknowledges that a supervisor may, in extremely limited circumstances, be held responsible based on his own failure to properly supervise or train his subordinates. However, with respect to such a claim, a plaintiff must be able to show:

> (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

Estate of Davis *ex rel.* McCally v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

In this lawsuit, plaintiff has alleged only in a vague, conclusory fashion that the supervisory defendants should be held responsible for their subordinates' actions. To construe such generalized assertions as a separate failure-to-supervise claim, rather than as a *respondeat superior* claim, would effectively eviscerate the prohibition against the latter. However, in any event, the Court notes that plaintiff's allegations are insufficient to state a cognizable failure-to-supervise claim for another reason.

Plaintiff makes clear in his supplemental filing[10] that the supervisory officials are named as defendants because they were "grossly negligent" in managing their subordinates. However, even if that were true, "gross negligence" falls short of the "deliberate indifference" required for a failure-to-supervise claim. Regarding the "deliberate indifference" requirement for such a claim, the Fifth Circuit has observed:

> "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Deliberate indifference requires a showing of more than negligence or even gross negligence*. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.

406 F.3d at 381-82 (footnotes, quotation marks, and brackets deleted) (emphasis added).

As to plaintiff's theory that the supervisory officials should be held liable on the basis that they failed to take adequate corrective action in response to plaintiff's administrative complaints, such actions or inactions are insufficient to serve as a basis for liability. In Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), a prisoner alleged that prison officials failed to properly investigate his grievances and letters complaining about perceived rights violations. The United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty interest in having his grievances investigated and resolved to his satisfaction. Id. at 373-74; see also Propes v. Mays, No. 04-41498, 2006 WL 452319 (5th Cir. Feb. 23, 2006). Geiger is controlling precedent and bars petitioner's recovery on his second legal theory.

---

[10] Rec. Doc. 23.

As to plaintiff's allegations that the defendants were involved in some vast, vague conspiracy against him, his allegations are conclusory at best. Conclusory allegations of conspiracy fail to state a § 1983 cause of action. Russell v. Millsap, 781 F.2d 381, 383 (5th Cir. 1985); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992).

### Elizabeth Olivera

Plaintiff has named Elizabeth Olivera, a prison social worker, as a defendant. At the Spears hearing, plaintiff indicated that Olivera was allegedly aware of the ongoing violations of his rights but was not herself an active participant in those alleged violations. Without such personal involvement, there is no basis for holding her personally liable. "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Moreover, the United States Fifth Circuit Court of Appeals has held: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Plaintiff has not done so with respect to Olivera. To the extent that he is alleging that she was a participant in the conspiracy against him, that conclusory allegation, as previously noted, fails to state a § 1983 cause of action.

### False Disciplinary Charges

At the Spears hearing, plaintiff contended that, while incarcerated at WCI, he was repeatedly falsely accused and convicted of disciplinary violations. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused and convicted of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin,

No. 93-4170 (5th Cir. Sept. 15, 1993) (unpublished). However, in 2003, the Fifth Circuit reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003), cert. denied, 543 U.S. 808 (2004). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, 106 Fed. App'x 260, 261 (5th Cir. 2004).[11]

---

[11] Moreover, even under prior law, plaintiff's claim would fail because he could not meet the "favorable termination" requirement to pursue such a claim. In Ordaz, the Fifth Circuit noted:

> Even assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), however, we have held that "a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor." [Brummett v. Camble, 946 F.2d 1178, 1180 (5th Cir. 1991).] Our reasoning in this regard is straightforward:
>
>> Absent a ... requirement of "favorable termination" for the constitutional tort of malicious prosecution, a plaintiff could state a § 1983 claim even in cases in which he was ultimately convicted. In such cases, the federal courts would be forced to permit defendants to relitigate the merits of their criminal prosecutions via § 1983 despite the state court conviction. Such a rule, which poses the prospect of harassment, waste, and endless litigation, conflicts with the most basic principles of federalism.
>
> Id. at 1183.
> The concerns highlighted in Brummett apply equally, if not with more force, in the context of § 1983 claims predicated on the filing of false disciplinary charges in state prisons. Without an allegation "that the [disciplinary proceeding] terminated in his favor," [the prisoner] simply has not made an arguable showing that any federally protected right has been violated. Absent such an allegation, his false disciplinary claim is legally frivolous under our precedent.

Ordaz, No. 93-4170; see also Reed v. Quarterman, No. 96-40949 (5th Cir. Oct. 20, 1997); Reed v. Griggs, No. 94-40587 (5th Cir. Dec. 13, 1994). Because plaintiff was convicted of the rule violations in his prison disciplinary proceedings, he would be unable to meet the "favorable termination" requirement.
    Moreover, to the extent that plaintiff may be alleging that his due process rights were

Verbal Abuse

At the Spears hearing, plaintiff testified that he was mocked and taunted by Lt. Ronnie Seal, Douglas Brandon, and Micah McMurray during the incident on December 10, 2004. To the extent that plaintiff's allegation could perhaps be construed as a claim for verbal abuse, no such claim is cognizable in a federal civil rights action. See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983 ...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

---

violated in the disciplinary proceedings, he also has failed to state a claim on that basis. The United States Supreme Court has held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citations omitted). The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)). The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added). In the instant case, plaintiff has not alleged that his punishment in the disciplinary proceedings in any way extended the duration of his incarceration.

Remaining Claims

Two claims remain. First, plaintiff essentially claims that he was subjected to cruel and unusual punishment by Lt. Ronnie Seal, Douglas Brandon, and Micah McMurray when they forced him to carry his belongings, weighing approximately one hundred twenty-five pounds, behind his back while handcuffed and shackled on December 10, 2004. Second, plaintiff claims that Dr. Jerry Thomas, Bessie Carter, Nita Pittman, and Josh Gall were deliberately indifferent to his serious medical needs. Although expressing no opinion as to whether those claims might ultimately prove meritorious, the Court cannot say at this point that the claims are legally frivolous. Accordingly, the Court recommends that those two claims against those specified defendants be allowed to proceed for the time being.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claim against the Louisiana Department of Public Safety and Corrections be **DISMISSED WITHOUT PREJUDICE** pursuant to the Eleventh Amendment.

It is **FURTHER RECOMMENDED** that plaintiff's claims against Richard Stalder, James Miller, Robert Tanner, Kathy McGinnis, Peter Mora, the "Medical Department," Lt. Col. William Dunaway, Jerry Miller, Larry Grow, Capt. Billy Anderson, and Elizabeth Olivera be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that plaintiff's claims that he was falsely charged with and convicted of disciplinary charges and that he was verbally abused be **DISMISSED WITH**

**PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that plaintiff be allowed to proceed on his claims against Lt. Ronnie Seal, Douglas Brandon, and Micah McMurray for cruel and unusual punishment, and against Dr. Jerry Thomas, Bessie Carter, Nita Pittman, and Josh Gall for deliberate indifference to his serious needs.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this    24th    day of April, 2006.

                                                  **SALLY SHUSHAN**
                                                  **UNITED STATES MAGISTRATE JUDGE**